[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Linda Infante, commenced this action against the defendants, Joyce Thomas, as Commissioner of the Department of Social Services, and the Department of Social Services (DSS), on January 13, 1997. The plaintiff instituted suit for alleged violations of General Statutes §§ 46a-60 and 46a-70, the Americans with Disabilities Act,42 U.S.C. § 12101, et seq., and § 504 of the Rehabilitation Act,29 U.S.C. § 794, et seq. The plaintiff claims that she developed injuries to her wrist and arm as a result of her work at DES, and that, following these injuries, DSS failed to reasonably accommodate her as required by law. As a result of the failure to provide reasonable CT Page 8321 accommodation, the plaintiff's injuries were exacerbated. DSS disputes each of the plaintiff's claims.[1]
"The ADA provides that `[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability . . .'42 U.S.C. § 12112 (a). The term "discriminate' includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . ."42 U.S.C. § 12112 (b)(5)(A). Under the ADA, "a plaintiff can state a claim for discrimination based upon her employer's failure to accommodate her handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation.'" Ezikovich v. Commission on Human Rights opportunities, 57 Conn. App. 767, 774, 750 A.2d 494, cert. denied,253 Conn. 925, 754 A.2d 796 (2000). General Statutes § 46a-60 (a) provides in pertinent part: "It shall be a discriminatory practice in violation of this section: (1) For an employer . . . to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . physical disability. . . ." General Statutes § 46a-70 (a) provides in pertinent part: "State officials and supervisory personnel shall recruit, appoint, assign, train, evaluate and promote state personnel on the basis of merit and qualifications, without regard for . . . physical disability unless it is shown by such state officials or supervisory personnel that such disability prevents performance of the work involved."
In the present case, the plaintiff developed a repetitive stress injury known as carpal tunnel syndrome as a result of her employment as an eligibility services worker. The plaintiff's functions include, but are not limited to, repetitive data entry into a computer, which consumed an average 15-20 hours per week of her 35-hour work week. The plaintiff sustained an injury to her left arm back on March 4, 1993. The plaintiff's supervisor, Carol Quinn, was notified of the injury.
The plaintiff sought medical attention from Dr. Arthur Siegel, and was given a work limitation, which the plaintiff provided to her supervisor. As a result of the plaintiff's failure to improve medically, the plaintiff engaged the services of Dr. Eugene Frechette in April 1993. Frechette determined the plaintiff's injuries to be permanent, and prepared a report detailing the plaintiff's permanency rating, which was given to DSS. Frechette informed DSS that the plaintiff's permanent injuries were exacerbated by the repetitive data entry required by the CT Page 8322 plaintiff's employment.
In June 1993, Frechette issued a Disability Certificate concerning the plaintiff's impairments. Frechette further prepared a report outlined in detail accommodations that were necessary given the plaintiff's impairment. Among the specifications was an ergonomic work station for the computer on which the plaintiff worked. No accommodation was forthcoming, resulting in the plaintiff personally requesting an adjustable height computer table. The plaintiff's request went unheeded. In November 1993, no accommodations having been made, Frechette prepared a follow-up report, given to DSS, stating that the plaintiff had experienced an increase in pain as a result of the defendant's failure to provide the physician-ordered accommodation. Despite repeated requests to various supervisors, the plaintiff did not receive the accommodation required as a result of her impairment.
In May 1994, the plaintiff developed an impairment of her right arm as a result of its overuse to compensate for the injuries to her left arm. The plaintiff once again treated with Frechette, this time for the injuries to her right arm. Frechette prepared a report of the injury and impairment to the right arm and forwarded the report to DSS. Because DSS never provided the plaintiff with an ergonomic work space, she purchased her own computer table. The defendant did not provide a computer table to the plaintiff until July 12, 1994. The table, however, was unsatisfactory due to its lack of adjustability. The plaintiff notified DSS of her continued problem with the provided table in August 1994, but the problem was never corrected.
The plaintiff again treated with Dr. Frechette because of the continued pain in her right arm. Frechette once again conveyed to DSS the importance of ergonomic accommodations for the plaintiff. The plaintiff experienced an increase in pain through September 1994, and throughout that month, repeated requests were made to various supervisors for accommodation. Frechette prepared another report indicating that the defendant's failure to provide accommodation was contributing to the worsening of the plaintiff's condition.
Also during this time, the plaintiff engaged the medical services of Dr. Barbara Moynihan, a psychologist, for mental distress. The plaintiff's treatment with Dr. Moynihan began in April 1994 and continued through October 1994. Dr. Moynihan diagnosed the plaintiff with post traumatic stress disorder as a result of the work environment that she was experiencing.[2] Dr. Moynihan prepared a report and sent it to DSS. Dr. Moynihan referred the plaintiff to a psychiatrist, Dr. Orrock, who placed the plaintiff on medication for depression and anxiety. Dr. Orrock's report was also sent to the defendant. The plaintiff continued CT Page 8323 to treat with both doctors up to and including February 9, 1998.
The plaintiff's repeated requests for accommodation were never fairly and reasonably dealt with by DSS. Finally, on March 24, 1995, the plaintiff's supervisor, Mary Priestman, sent a letter to the plaintiff acknowledging the plaintiff's disability and need for accommodation. DSS provided the plaintiff, now in a new office without her own ergonomically correct computer table, with an ergonomic chair, which was stolen and never replaced. The plaintiff was never provided with a work station that allowed her to type without severe pain. DSS did provide the plaintiff with voice recognition software for the computer, which the plaintiff testified did not work correctly. Because of this, the plaintiff eschewed the software and continued to type as she had before, with a pencil using the "hunt and peck" method. DSS also provided to the plaintiff, and all its employees, a foot rest, glare screen and video terminal stand. The plaintiff was never provided with an ergonomic chair, work station or headset, despite repeated requests for such equipment over three years.
It is clear from the testimony and extensive documentation entered as evidence at trial that the plaintiff is entitled to relief. The plaintiff has proven, by fair preponderance of the evidence, that she is disabled.[3] The court finds that in this case, because the plaintiff's injuries have a direct and serious impact on the plaintiff's ability to perform her job functions, that the carpal tunnel syndrome from which she suffers is a physical disability under the ADA and the General Statutes. Further, the reports from the plaintiff's various treating physicians, particularly Dr. Frechette's reports, make it clear that the plaintiff's injuries and disabilities were exacerbated by the department's repeated failure to provide reasonable accommodation. Indeed, the plaintiff has shown by a fair preponderance of the evidence that, had DSS heeded Dr. Frechette's report from the beginning, which the department had fair and ample notice of, the plaintiff may not have developed a permanent impairment in the right arm.
Accordingly, the court finds that the plaintiff is entitled to a measure of relief for the department's failure to reasonably accommodate her, which led to the exacerbation of her injuries. Based on the foregoing, the court finds for the plaintiff and awards her the amount of $20,000 as compensatory damages.
The Court
Moran, J.